**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-2253

EFREN GARCIA URRUTIA

Petitioner - Appellant

v.

FRANCIS DIOSMAR ARENA FLORES

Respondent - Appellee

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:25-cv-00103-BO-KS)

Submitted:  February 26, 2026                         Decided:  March 30, 2026

Before DIAZ, Chief Judge, RICHARDSON, Circuit Judge, and KEENAN, Senior Circuit Judge.

Vacated and remanded by unpublished per curiam opinion.

**ON BRIEF:**  George R. Hausen, Jr., LEGAL AID OF NORTH CAROLINA, Raleigh, North Carolina, for Appellant.  George N. McGregor, GUIRGUIS LAW, P.A., Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Efren Garcia Urrutia filed this action under the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001-9011, which implements the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention). Urrutia seeks the return of his son (O.R.G.A.) to Mexico, alleging that O.R.G.A.'s mother, respondent Francis Diosmar Arena Flores, wrongfully removed him to the United States when she brought O.R.G.A. to live with her in North Carolina. Urrutia now appeals from the district court's order denying his petition. After reviewing the record, we conclude that the district court erred in its analysis of Urrutia's custody rights and that the court's factual findings on Flores' affirmative defenses lack evidentiary support. We therefore vacate the district court's order and remand for further proceedings.

I.

O.R.G.A. was born in Mexico in August 2020 to Urrutia and Flores. The couple separated in September 2023. Flores alleges that Urrutia was sexually and emotionally abusive. Urrutia denies these allegations and asserts that the couple separated because Flores wanted to move to the United States. Following the separation, Urrutia sought a custody order in Mexican family court. The court ultimately entered a consent order purporting to define the scope of the parties' parental rights (the consent order).

On December 6, 2023, Urrutia received a message from Flores stating that she had entered the United States with O.R.G.A. Urrutia filed a report with the local Mexican police, who eventually located Flores and O.R.G.A. in Raleigh, North Carolina.

2

On February 24, 2025, Urrutia filed the present petition in district court alleging that O.R.G.A., who was four years old at the time of the filing, had been wrongfully removed and should be returned to Mexico pursuant to the Hague Convention. Flores moved to dismiss the petition asserting that Urrutia does not have custody rights to O.R.G.A. Alternatively, she asserted two affirmative defenses that allegedly protect her from having to return the child: 1) that doing so would place O.R.G.A. at "grave risk" of physical and psychological harm, and 2) that O.R.G.A. is well-settled in North Carolina.

The district court held a hearing on Urrutia's petition on July 30, 2025. The court heard testimony from Urrutia and legal argument from counsel on the question of custody. The hearing concluded without Flores presenting evidence. The court noted that it would issue a "legal opinion" on the custody question and would give Flores another "day to present [her] case" in support of her defenses. However, when the court released its order denying the petition, it did not decide the custody question and instead resolved the case based on Flores' defenses. Urrutia appeals from this order.

## II.

We review the district court's findings of fact for clear error and consider de novo the court's conclusions concerning principles of domestic, foreign, and international law. *Miller v. Miller*, 240 F.3d 392, 399 (4th Cir. 2001).

3

III.

Under the Hague Convention, a petitioner seeking the return of an abducted child must prove by a preponderance of evidence that the child was "wrongfully removed" under the terms of the Convention. *Bader v. Kramer*, 484 F.3d 666, 668 (4th Cir. 2007) (quoting 22 U.S.C. § 9003(e)(1)). To do so, the petitioner must prove that "(1) the child was habitually resident in the petitioner's country of residence at the time of removal, (2) the removal was in breach of the petitioner's custody rights under the law of his home state, and (3) the petitioner had been exercising those rights at the time of removal." *Id.*

Once a petitioner makes this prima facie showing, return of the child is required unless the respondent can establish one of four affirmative defenses. *Id.* As relevant here, the respondent seeks to prevent return of the child by asserting two such affirmative defenses: (1) presenting "clear and convincing evidence" that returning the child would place him at "grave risk" of harm, and (2) establishing by a preponderance of evidence that the child is well-settled in the United States. *See id.* at 668-69.

The district court assumed, without deciding, that Urrutia established a prima facie case of wrongful removal. In its discussion, however, the court suggested that common law contract principles under American law were applicable to assess whether the consent order granted Urrutia custody rights under the Hague Convention. This was error. The issue whether Urrutia has custody rights is a question of Mexican, not American, law. *See Abbott v. Abbott*, 560 U.S. 1, 10 (2010) (consulting Chilean law to determine the content of petitioners' rights). Therefore, although the district court is not required to resolve the prima facie case of wrongful removal before considering affirmative defenses, *see Smedley*

4

*v, Smedley*, 772 F. 3d 184, 189-90 (4th Cir. 2014), if the court on remand answers the question whether Urrutia has custody rights, it must do so by applying Mexican law.

As we have noted, the district court decided the petition after considering Flores' affirmative defenses. The court concluded that Flores failed to prove that O.R.G.A. would be at "grave risk" if returned to Mexico. Nevertheless, the court held that removal was inappropriate, because O.R.G.A. was "well-settled" in North Carolina. There is nothing in the record to support either conclusion. Despite the court's assertion at the hearing that Flores would be permitted to present evidence at a later date, the court ruled on Flores' affirmative defenses based only on her proposed factual findings. Such findings, when not supported by evidence, cannot serve as a basis for the court's holdings. *See White v. Carolina Paperboard Corp.*, 564 F.2d 1073, 1082 (4th Cir. 1977). Moreover, the court's premature order denied Flores the opportunity to present evidence in support of her affirmative defenses. And, in the absence of such evidence, as well as evidence that Urrutia may choose to present regarding Flores' affirmative defenses, this Court cannot review the district court's holding. Therefore, we vacate the district court's order and remand the case for further development of the record, including evidentiary proceedings to hear evidence that may be offered by both parties.

IV.

For these reasons, we vacate the district court's order and remand the case to the court for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

5